IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JEFFREY BONNEY,

                Plaintiff,

                                          No. 3:13-cv-00547-HZ

                                          OPINION & ORDER

      v.

FABIO PERINI NORTH AMERICA, INC., a
Wisconsin corporation; and HYGIENE
SYSTEMS, INC. dba OMNISYSTEMS, a
North Carolina Corporation,

                Defendants.


Eric D. Virshbo
Jason R. Poss
MACMILLAN SCHOLZ & MARKS, PC
900 SW 5th Ave., Ste 1800
Portland, OR 97204

        Attorneys for Plaintiff

B. John Casey
Stephanie E.L. McCleery
K&L GATES LLP
222 SW Columbia St., Ste 1400
Portland, OR 97201


1 - OPINION & ORDER

Attorneys for Fabio Perini North America, Inc.

Steven D. Hallock
LAW OFFICE OF JOHN E. SNARSKIS
5885 Meadows Rd., Ste 801
Lake Oswego, OR 97035

Attorney for Hygiene Systems, Inc.

HERNANDEZ, District Judge:

Jeffrey Bonney brought this action in Multnomah County Circuit Court against Fabio Perini North America, Inc. ("FPNA") and Hygiene Systems, Inc. ("Hygiene") alleging strict product liability, breach of the warranty of merchantability, and negligence. FPNA subsequently removed Plaintiff's action to the United States District Court for the District of Oregon based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff's cause of action arises out of an injury he sustained to his left arm while operating a Perini 716B Rewinder ("Rewinder" or "Machine") at his place of employment, Oasis Tissue, LLC ("Oasis Tissue").[1] Compl., p. 1. Now before the Court is FPNA's motion for summary judgment [24] and Hygiene's motion for summary judgment [18]. For the reasons that follow, FPNA's motion for summary judgment is GRANTED in part and DENIED in part and Hygiene's motion for summary judgment is GRANTED in part and DENIED in part.

## BACKGROUND

The Rewinder was manufactured in Lucca, Italy, and was imported in the United States by FPNA. It was initially sold to American Tissue Corporation on March 21, 2000, and shipped to American Tissue Mills in Memphis, Tennessee, around October 2000. The Rewinder was subsequently moved to Mexico and later returned to the United States, where it was ultimately sold in 2007 to Hygiene, a manufacturer of paper products, at a bankruptcy sale. Hygiene never

---

[1] The Machine assembles rolls of toilet tissue.

used the Rewinder to produce paper products, but rather "cannibalized" it for spare parts to support other machines at Hygiene's North Carolina production facility.

In 2010, George Don, the principal of Oasis Tissue, contacted FPNA about purchasing a used Rewinder.[2]  FPNA informed Don that Hygiene may have a used Rewinder for sale.  Don contacted Hygiene, and on September 17, 2010, Hygiene agreed to sell the Rewinder to Oasis Tissue pursuant to an Asset Purchase Agreement ("APA").  Under the APA, Hygiene agreed to sell the Rewinder "in good working condition" to Oasis Tissue and to "provide its technical staff, power, access to tools, etc. to help, assist and train Oasis staff in making the machines operable." Don Dep., Ex. 7, p. 4.

After entering into the APA, Don sent two Oasis Tissue employees to Hygiene's North Carolina production facility.  One of the employees Oasis Tissue sent was Dennis Johnson, whose job was to reassemble the Machine using replacement parts, make it operational, and prepare it for shipment to Oregon.  The other employee was Plaintiff, whose job was to learn how to operate the Rewinder by observing Hygiene employees operate identical Perini 716B Rewinder machines.

While at Hygiene's North Carolina production facility, Plaintiff never trained on the Machine, but instead trained on a similar Perini 716B Rewinder because Hygiene could not get the Machine fully functional.  To get the Machine operational, Oasis Tissue had the Rewinder shipped to its location in Portland, Oregon, sometime in 2010.  Among other components missing from the Rewinder at the time it was shipped to Oasis Tissue, were the Rewinder's access doors, which were connected to an interlocking system that was designed to shut the Rewinder down whenever the access doors were open.  The interlock system on the Rewinder had been bypassed and was never engaged.  Notably, Hygiene provided Oasis Tissue with access

---

[2] Oasis Tissue is located in Portland, Oregon.

doors from another machine, but did not engage the interlock system on the Rewinder before shipping it to Oasis Tissue.

After receiving the Rewinder in Portland, Oregon, Oasis Tissue was unable to get the Rewinder to function the way it wanted, and requested technical support and additional training from FPNA.  FPNA agreed to provide the technical support and training requested by Oasis Tissue and sent one of its technicians, Adam Rosenthal, to Oasis Tissue from February 2, 2011, to February 5, 2011.  On February 23, 2011, approximately three weeks after Rosenthal left Oasis Tissue, Plaintiff attempted to remediate a jammed cardboard tube stuck in the Rewinder while it was running.  While attempting to unjam the Rewinder, Plaintiff's left coat arm was sucked into the Machine's pulley system, which in turn, sucked Plaintiff's left arm into the Rewinder, crushing his left bicep.

Defendants filed motions for summary judgment, which seek to dismiss all of Plaintiff's claims.  On January 10, 2014, I held oral argument to address Plaintiff's motions.

## STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts"

showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

### I. FPNA's Motion for Summary Judgment

Plaintiff brings two claims against FPNA.[3] Plaintiff claims FPNA is strictly liable because the Machine was "designed, manufactured, assembled, and/or sold in a defective condition," "[f]ailed to perform its intended function[,]" "[f]ailed to have an interlock system[,]" and "[f]ailed to contain a proper warning as to how to resolve Machine jams." Compl., pp. 2-3. Plaintiff's third claim alleges that FPNA was negligent in "designing, manufacturing, assembling, and/or selling the Machine in a defective manner[,]" failing "to provide Oasis Tissue with a machine that properly functioned without jamming[,]" failing "to properly train Oasis Tissue and [P]laintiff as to how to properly operate the machine[,]" and failing "to properly train Oasis Tissue and [P]laintiff as to how to resolve Machine jams." Id., pp. 3-4.

_____

[3] Plaintiff concedes it no longer seeks its second claim for relief, breach of the implied warranty of merchantability, against FPNA.

**A. Statute of Repose**

FPNA argues Plaintiff's product liability and negligence claims are barred by the statute of ultimate repose.  I agree in part.

In contrast to a statute of limitations, which requires "a plaintiff commence an action within a specified time after his . . . claim has accrued[,] . . . statutes of ultimate repose establish maximum times to file a claim, regardless of the date of discovery of an injury or other circumstances that may affect the expiration of a statute of limitations."  Waxman v. Waxman & Associates, Inc., 198 P.3d 445, 507 (Or. App. 2008) (internal quotation marks and citations omitted).  Under Oregon's statute of ultimate repose, ORS 30.905, "[a] product liability civil action for personal injury . . . must be commenced before the later of:

> (a) Ten years after the date on which the product was first purchased for use or consumption; or
>
> (b) . . . if the product was manufactured in a foreign country, the expiration of any statute of repose for an equivalent civil action in the state into which the product was imported.

ORS 30.905(2)(a)-(b).

ORS 30.900 defines a "product liability civil action" as "a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of:

> (1) Any design, inspection, testing, manufacturing or other defect in a product;
>
> (2) Any failure to warn regarding a product; or
>
> (3) Any failure to properly instruct in the use of a product.

ORS 30.900(1)-(3).

"A product liability civil action embraces all theories a plaintiff can claim in an action based on a product defect, including, . . . negligence, strict liability, breach of warranty, and

fraudulent misrepresentation." Simonsen v. Ford Motor Co., 102 P.3d 710, 715 (Or. App. 2004) (internal quotation marks and citations omitted). ORS 30.905, however, only limits a defendant's "exposure to liability for acts or omissions taking place before or at the time that the defendant places a product in the stream of commerce." Erickson Air-Crane Co. v. United Tech. Corp., 735 P.2d 614, 618 (Or. 1987). "Nothing in ORS 30.905 or its legislative history indicates that the legislative intent was to allow a manufacturer to retreat to the date of 'first purchase for use or consumption' and raise the defense of ORS 30.905 for negligent acts committed after the date of the first purchase for use or consumption." Erickson, 735 P.2d at 618.

### 1. Failure to Train

Plaintiff concedes that the ultimate statute of repose covers his claims that FPNA was negligent in "[d]esigning, manufacturing, assembling, and/or selling the Rewinder in a defective manner" and "[f]ailing to provide Oasis Tissue with a machine that properly functioned without jamming[.]" Resp., p. 11. Plaintiff, however, contends that his claim that FNPA was negligent in failing to train him on how to properly operate the Machine and resolve jams are based on facts that occurred after the initial sale of the Rewinder in 2000 and thus are not barred by ORS 30.905 . I agree.[4]

Here, Plaintiff presents evidence showing that Oasis Tissue paid a technician from FPNA, Rosenthal, to come out to Oasis Tissue from February 2, 2011, to February 5, 2011, to troubleshoot problems with the Rewinder and provide training. Don Dep., p. 16. Rosenthal's alleged failure to train Plaintiff sufficiently in 2011, approximately a decade after the Rewinder

---

[4] The Machine was manufactured in Italy and imported into Tennessee. Similar to Oregon's ultimate statute of repose, Tennessee's ultimate statute of repose under Tennessee Code ("TC") § 29-28-103(a) provides, "Any action against a manufacturer or seller of a product for injury to person . . . caused by its defective or unreasonably dangerous condition must be brought . . . within ten (10) years from the date on which the product was first purchased for use or consumption . . . ." Plaintiff does not address TC § 29-28-103, but rather only addresses Oregon's statute of repose, ORS 30.905.

was first purchased for use or consumption in 2000, are not covered under ORS 30.905. Based on the above, I conclude that ORS 30.905 does not bar Plaintiff's failure to train negligence claim against FPNA.

### 2. First Purchased For Use or Consumption

Plaintiff asserts FPNA's motion for summary judgment must be denied because there is a question of fact as to when the Machine was "first purchased for use or consumption" and thus, a question of fact as to when the statute of repose began to run. Specifically, Plaintiff maintains there is a question of fact as to whether "the statute of repose for the refurbished Rewinder started in 2000 (original manufacture), 2010 (sale of refurbished Rewinder), or 2011 (modifications made to refurbished Rewinder)." Resp., p. 11. Plaintiff contends FPNA "was a participant in the refurbishment of the Rewinder and the 2010 sale to Oasis Tissue" and "provided Hygiene Systems with new parts [in 2010,]" including "a defective servomotor[.]" Id., p. 10. Plaintiff also contends that there is a genuine issue of material fact as to when the statute of repose began to run where "technicians . . . spent hours and hours on the telephone with Hygiene['s] . . . maintenance manager in an attempt to assist Hygiene . . . in restoring the Rewinder to a good working condition." Id. (internal quotation marks omitted). Finally, Plaintiff contends that the "statute of [ultimate] repose . . . arguably restarted when [FPNA] . . . provided additional new parts and . . . modified the Rewinder . . . in 2011." Id., p. 11.

Plaintiff's arguments fail. Plaintiff cites no authority supporting its position that the date the "product was first purchased for use or consumption" under ORS 30.905 changes every time a defendant provides parts or technical support for that product. The two cases on which Plaintiff relies, Myers v. Cessna Aircraft Corp., 553 P.2d 355 (Or. 1976) and State, ex rel. Hydraulic Servocontrols Corp. v. Dale, 657 P.2d 211 (Or. 1982) simply do not support Plaintiff's

position.  Aside from Plaintiff's claim that FPNA negligently trained him, which as discussed above, does not fall under the protection of ORS 30.905, all of Plaintiff's other claims, are barred by ORS 30.905 because he brings them more than ten years after the Machine was first purchased for use or consumption in 2000.

### B. Strict Product Liability

Plaintiff's strict product liability claim also fails for another reason.  At oral argument, Plaintiff asserted that his strict product liability claim survives summary judgment because there is a triable issue of fact as to whether the new components installed on the Machine, including the new motor, were defective.  I disagree.

The Complaint does not give FPNA notice of such a claim.  The Complaint fails to allege specifically that any of the component parts installed on the Machine were defective.  Rather, the Complaint alleges that the Machine as a whole was defective because it jammed and lacked safety doors and an interlock system.  Equally as important is the fact that Plaintiff presents no facts showing that any component of the Machine, standing alone, was defective.

In sum, Plaintiff fails to create a triable issue of fact as to his strict product liability claim.

### C. Oasis Tissue's Alleged Negligence

FPNA contends that this Court must grant its motion for summary judgment as to Plaintiff's negligence claims because the injuries Plaintiff sustained was solely the result of Oasis Tissue's negligence, not FPNA's.  FPNA asserts that but for Oasis Tissue's failure to train Plaintiff on how to properly operate the Rewinder, failure to make the Rewinder's operational and safety manuals available to Plaintiff, failure to engage the Rewinder's safety interlocks, failure to properly heat its factory, and failure to provide Plaintiff with the proper sized cores to feed into the Machine, Plaintiff would not have been injured.  I disagree.

To prove negligence in Oregon, a plaintiff must establish facts showing:

(1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

Solberg v. Johnson, 760 P.2d 867, 870 (Or. 1988) (citing Fazzolari v. Portland School Dist. No. 1J, 734 P.2d 1326 (1987) and Stewart v. Jefferson Plywood Co., 469 P.2d 783 (Or. 1970)).

With regard to Plaintiff's failure to train claim, Plaintiff proffers his own deposition statements that he "felt it wasn't dangerous [to run the Machine without the interlock system engaged] because [Rosenthal] did it" and that Rosenthal did not tell him about the "lockouts or the safety issues . . . [regarding the Machine's] . . . doors . . . ." Bonney Dep., p. 114. Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, I conclude that Plaintiff creates a genuine of material fact as to whether FPNA was at least partially responsible for Plaintiff's injuries.

In sum, I conclude that only Plaintiff's failure to train claim survives summary judgment. FPNA's motion for summary judgment is granted in part and denied in part.

**II. Hygiene's Motion for Summary Judgment**

Plaintiff brings three claims against Hygiene. Plaintiff alleges: (1) Hygiene is strictly liable for designing, manufacturing, assembling, and selling a defective Machine; (2) Hygiene breached the implied warranty of merchantability; and (3) Hygiene was negligent in "designing, manufacturing, assembling, and/or selling the Machine in a defective manner[,]" failing "to provide Oasis Tissue with a machine that properly functioned without jamming[,]" failing "to properly train Oasis Tissue and [P]laintiff as to how to properly operate the machine[,]" and

failing "to properly train Oasis Tissue and [P]laintiff as to how to resolve Machine jams."

Compl., pp. 2-4.

### A. Strict Product Liability

#### 1. ORS 30.920

Hygiene argues that it is entitled to summary judgment because under Oregon law, sellers

of used goods are not strictly liable for a defect created by the manufacturer.  In support of its

position, Hygiene cites Tillman v. Vance Equipment Co., 596 P.2d 1299 (Or. 1979).  Hygiene

also argues that Plaintiff fails to present any evidence showing Hygiene made any express

warranty, designed, manufactured, or created the allegedly dangerous condition, or identified the

specific defect that allegedly made the Machine unreasonably dangerous.  Finally, Hygiene

asserts that the Rewinder was purchased "as is" and revised any express warranties when Oasis

Tissue accepted the Machine.

Plaintiff responds that Hygiene is not entitled to summary judgment on its strict product

liability claim because the court in Tillman stated that a seller of used goods may still be liable

where "the used good seller makes a representation as to the quality of the used good."  Resp., p.

8.  Plaintiff contends that this case is more analogous to Allstate Indemnity Company v. Go

Appliances, LLC, 2006 WL 2045860, at *2 (D. Or. 2006) where, according to Plaintiff, the court

held that the defendant did more than sell the refrigerator "as is" when it warranted the

performance of the refrigerator for one year, represented the refrigerator had a new compressor,

and installed the new compressor.  Plaintiff asserts there is a genuine issue of material fact as to

whether "Hygiene Systems was more than just a typical used goods seller" where Hygiene

expressly warranted in the APA that the Machine would be in a "good working condition."

Resp., p. 9.  Plaintiff also asserts that there remains a genuine issue of material fact as to whether

"Hygiene Systems was more than just a typical used goods seller" where Hygiene made "extensive modifications to the Rewinder." Id.

I am not persuaded by either of the parties' arguments. The parties do not address or even cite ORS 30.920, the statute governing strict product liability in Oregon. Indeed, Plaintiff conceded at oral argument on January 10, 2014, that his strict product liability claim is governed by and brought under ORS 30.920. I find that Plaintiff's strict product liability claim fails in the first instance because Plaintiff does not present any evidence showing that he satisfies the elements of ORS 30.920.

"ORS 30.920 sets out the elements for a strict product liability claim." Two Two v. Fujitec Am., Inc., 305 P.3d 132, 138 (Or. App. 2013) (citing ORS 30.920). "In 1967, the Oregon Supreme Court adopted the principles of Restatement (Second) of Torts, § 402A as the proper method of analyzing strict products liability claims." Ensley v. Strato-Lift, Inc., 116 F. Supp. 2d 1175, 1181 (D. Or. 2000) (citing Heaton v. Ford Motor Co., 435 P.2d 806, 808 (1967)); Lancaster v. W. A. Hartzell & Assocs., Inc., 637 P.2d 150, 153 (Or. App. 1981) (ORS 30.920 sets forth the elements for strict liability in Oregon and codifies the Restatement (Second) of Torts § 402A (1965)). Section 402A provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and
> >
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A (1965).

ORS 30.920 provides in similar fashion:

(1) One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the property of the user or consumer is subject to liability for physical harm or damage to property caused by that condition, if:

(a) The seller or lessor is engaged in the business of selling or leasing such a product; and

(b) The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold or leased.

ORS 30.920(1)(a)-(b); see also Two Two, 305 P.3d at 138 (same).

There is simply no evidence in the record showing that Hygiene is a seller engaged in the business of selling Rewinder machines as required under ORS 30.920. The law of strict product liability in Oregon "focuses on whether the seller is engaged in the business of selling such a product . . . ." Lancaster, 637 P.2d at 153 (citation omitted). Comment f of § 402A provides that strict product liability does not "apply to the occasional seller . . . who is not engaged in that activity as a part of his business." Here, Plaintiff proffers no evidence showing that Hygiene has ever sold another Rewinder machine or that it sells Rewinder machines as a part of its business. Because the record is absent any evidence showing Hygiene is engaged in the business of selling Rewinder machines in the normal course of business as required under ORS 30.920, Plaintiff's strict product liability claim fails. See Lancaster, 637 P.2d at 153 ("Generally, it has been held that even if a merchant sells a product, if he is not engaged in the business of selling that particular product in the normal course of business, strict liability may not be imposed.") (Citations omitted).

## 2. Component Parts

As with FPNA, Plaintiff asserted at oral argument that his strict product liability claim against Hygiene survives summary judgment because there is a triable issue of fact as to whether the individual components installed on the Machine were defective. As discussed above,

Plaintiff fails to allege specifically or proffer any facts showing that any individual component of the Machine was defective.  Accordingly, Plaintiff's argument is unavailing.

In sum, Plaintiff fails to create a genuine issue of material fact as to his strict product liability claim against Hygiene.  Accordingly, Hygiene's motion for summary judgment as to this claim is granted.

### B. Breach of Implied Warranty of Merchantability

Plaintiff argues that there is a genuine issue of material fact as to whether Hygiene breached the implied warranty of merchantability under ORS 72.3140.  I disagree.

ORS 72.3140 provides:

[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the <u>seller is a merchant with respect to goods of that kind</u>. . . .

(2) Goods to be merchantable must be at least such as:
   (a) Pass without objection in the trade under the contract description; and

   (b) In the case of fungible goods, are of fair average quality within the description; and

   (c) Are fit for the ordinary purposes for which such goods are used; and

   (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

   (e) Are adequately contained, packaged and labeled as the agreement may require; and

   (f) Conform to the promises or affirmations of fact made on the container or label if any.

ORS 72.3140(1)-(2) (emphasis added).

Here, Plaintiff proffers no evidence showing that Hygiene is a merchant with respect to goods of that kind, namely whether Hygiene is a merchant with respect to Rewinder machines. Indeed, as stated above, Plaintiff presents no evidence showing that Hygiene has ever sold

another Rewinder machine, let alone that Hygiene is a merchant with respect to Rewinder machines within the meaning of ORS 72.3140. Hygiene's motion for summary judgment is granted as to this claim.

**C. Negligence**

The Complaint alleges Hygiene was negligent in (1) designing, manufacturing, assembling, and selling the Machine in a defective manner; (2) failing to provide Oasis Tissue with a machine that properly functioned without jamming; and (3) failing to train Plaintiff on how to properly operate the Machine and resolve machine jams. Compl., p. 4. As stated above, "[u]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." Fazzolari, 734 P.2d at 1336. Here, Plaintiff does not specifically argue or present any evidence showing a status, relationship, or a particular standard of conduct that creates, defines, or limits Hygiene's duty. Accordingly, to survive summary judgment, Plaintiff must create a triable issue of fact as to whether Hygiene's "conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." See Id. To prove a defendant's conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff, the plaintiff must establish facts showing:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

Solberg, 760 P.2d at 870 (citations omitted).

### 1. Duty to Train

Plaintiff maintains that he creates a triable issue of fact as to whether Hygiene adequately trained him on how to use the Machine.  Hygiene contends that its duty to train Plaintiff arises under common law and is "not defined by the [APA]" because "Plaintiff was neither a party to the contract nor a third party beneficiary" and because there is "no Oregon case supporting the argument that [Hygiene's] duties to [P]laintiff were defined by [the APA]."  Hygiene Mem., p. 10.

Here, the undisputed evidence shows that on September 17, 2010, Hygiene agreed to sell the Rewinder to Oasis Tissue pursuant to the APA.  Don Dep., Ex. 7, p. 4.  Under the APA, Hygiene also agreed to "provide its technical staff, power, access to tools, etc. to help, assist and train Oasis staff in making the machines operable."  Id.  Plaintiff does not articulate how its negligence claim arises under a contract solely between Hygiene and Oasis Tissue or how it is a third party beneficiary under the APA.  Accordingly, to the extent the Complaint alleges a negligence claim that arises out of the terms of the APA, it fails to survive summary judgment.

Hygiene argues that under common law negligence, it only had the duty to act reasonably when it provided training to Plaintiff and that the evidence shows it did so.  In support of its position, Hygiene presents evidence showing that its maintenance manager, Ken Stoll, gave Don a "complete parts list[,]" had the parts shipped, and installed the parts "to get the [M]achine running for [Don]."  Stoll Dep., p. 9.  Hygiene also presents evidence showing that Stoll was "on the phone extensively with [Fabio Perini] . . . trying to get [the Machine] . . . running" and that Plaintiff received training from Stoll's "operators."  Id., pp. 16-17.  Hygiene also presents statements by Stoll that Plaintiff was trained for at least 35-40 hours at Hygiene's North Carolina production facility.  Id., p. 22.  Hygiene further proffers statements by Johnson that Plaintiff was

at Hygiene's North Carolina production facility for approximately two weeks receiving training where Plaintiff spent approximately "90 percent of his time . . . with [Hygiene] employees." Johnson Dep., pp. 9, 33. Johnson also stated that Plaintiff worked with three Hygiene employees and that Plaintiff was "able to speak English with them." Id., p. 33. With respect to fixing jams, Hygiene asserts that there was no opportunity to show Plaintiff how to fix jams because the Machine did not jam while Plaintiff was in North Carolina. Bonney Dep., pp. 47-48. Finally, Hygiene proffers Don's opinion that he "thought [Plaintiff] had been trained" and Don's statement that Plaintiff never told him he "felt he wasn't properly trained or didn't know better." Don Dep., pp. 21, 43.

Plaintiff maintains he was not adequately trained. In support of his position, Plaintiff cites his own statements stating he received "very little" training–approximately "two or three hours for one day . . . ." Bonney Dep., p. 40. Plaintiff also presents evidence showing that Hygiene operated Rewinder machines without their front doors, which the evidence shows can only happen when the "interlocks" are bypassed. Stoll Dep., pp. 24, 27. Plaintiff also presents evidence showing that one of the employees who trained Plaintiff "didn't speak . . . a whole lot of English" and that based on that employee's lack of English skills, Plaintiff sometimes had to "ask three or four times to get an answer . . . ." Bonney Dep., p. 54. Finally, Plaintiff presents evidence showing that while in North Carolina, Plaintiff did not receive training the entire time because there was a "major breakdown" at Hygiene that "tied [Hygiene] up for pretty close to five days . . . ." Johnson Dep., p. 15.

The evidence proffered by Plaintiff creates a triable issue of fact as to whether Hygiene acted reasonably when training Plaintiff. Plaintiff presents sufficient evidence creating a genuine issue of fact as to how much training Plaintiff actually received. In addition, there is evidence

showing that Plaintiff may not have been properly trained where one of the employees who trained Plaintiff could not communicate effectively in English and where Plaintiff was trained without the access doors on the Machine and with the interlock system bypassed. Based on the evidence before me, Plaintiff satisfies his burden of creating a genuine issue of material fact as to whether Hygiene acted reasonably when training Plaintiff.

### 2. Duty to Provide Plaintiff with a Machine that Does Not Jam

Plaintiff contends that Hygiene's motion for summary judgment must be denied because there is a triable issue of fact as to whether Hygiene provided the Machine in "good working condition" where it failed to install the safety doors or activate the interlock system on the Rewinder. Hygiene maintains that it owed no duty to Plaintiff to provide any kind of machine to Plaintiff and contends that there was nothing defective about the Machine. Hygiene contends that it was Oasis Tissue that "kept the interlock disabled during set up, repair, and troubleshooting" and that "[e]ven if the interlocks had been activated in North Carolina, the only possible inference is that they quickly would have been disabled again once the machine arrived in Portland, because Dennis Johnson was in charge and that is the way he wanted it." Reply, p. 5.

Hygiene's argument concerning duty is misplaced. "In most cases, Fazzolari's 'reasonable foreseeability' approach to analyzing negligence liability eliminates the traditional 'duty of care' approach." Gibson v. Owyhee Produce, LLC, No. 3:11-cv-01132-SI, 2012 WL 3820229, at *11 n.5 (D. Or. 2012); see also Or. Steel Mills, Inc. v. Coopers & Lybrand, LLP, 83 P.3d 322, 328 (Or. 2004) ("Following Fazzolari, this court has discussed a defendant's liability for harm that the defendant's conduct causes another in terms of the concept of 'reasonable foreseeability,' rather than the more traditional 'duty of care.'"). As stated above, "unless the

parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." <u>Fazzolari</u>, 734 P.2d at 1336. Here, Hygiene fails to articulate or present evidence showing a status, relationship, or a particular standard of conduct that creates, defines, or limits Hygiene's duty. In addition, contrary to Hygiene's assertions, the undisputed facts show that the Rewinder lacked any functioning "interlock system" when Hygiene presented the Machine to Oasis Tissue. Bonney Dep., p. 122-23. Hygiene's speculation that Oasis Tissue would have disabled the interlock system even if Hygiene had presented the Machine to Oasis Tissue with a functioning interlock system is insufficient to establish that Hygiene is entitled to judgment as a matter of law.

### 3. Causation

Hygiene asserts that no reasonable person could conclude that Plaintiff's alleged lack of training was a substantial factor in causing his injury where Oasis Tissue refused to "put [the interlock system] into use", Plaintiff's "self-professed ignorance [of interlocks] may have had more to do with the passage of time and the inability to practice what he had learned than the quality of training he received in North Carolina", and that "[P]laintiff received more training after leaving North Carolina . . . from Adam Rosenthal." Hygiene Mem., pp. 12-13. Hygiene's arguments fail.

The evidence proffered by Hygiene simply does not establish a lack of causation. Hygiene's speculation that Oasis Tissue would have refused to install the interlock system had Hygiene provided the Rewinder with a properly functioning interlock system is insufficient to establish that Oasis Tissue's conduct alone caused Plaintiff's injuries. The "passage of time",

Plaintiff's "inability to practice", and the fact that Plaintiff received additional training from Rosenthal at most create a genuine issue of material fact as to whether Hygiene's conduct caused Plaintiff's injuries.

### 4. Comparative Fault

Hygiene contends that it is entitled to summary judgment because no reasonable jury could conclude that Plaintiff was less than 50% at fault where Plaintiff was trained on how to operate the Rewinder, Plaintiff had "experience working on [the Rewinder and] . . . should have known better than to reach into moving machinery[,]" and Plaintiff told Don a few minutes after the accident that he "made a big mistake." Hygiene Mem., p. 16; Don Dep., p. 21.

The law in Oregon regarding comparative fault is governed by ORS 31.600(1), which provides:

> Contributory negligence shall not bar recovery in an action by any person . . . to recover damages for . . . injury to person . . . if the fault attributable to the claimant was not greater than the combined fault of all persons specified in subsection (2) of this section, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the claimant.

ORS 31.600(2) states that "[t]he trier of fact shall compare the fault of the claimant with the fault of any party against whom recovery is sought . . . ." Thus, under ORS 31.600, comparative fault bars Plaintiff's recovery if Plaintiff's fault is greater than Defendant's. See ORS 31.600(1).

Here, the facts on which Hygiene relies do not establish that Plaintiff's purported fault was greater than Hygiene's. At best, the evidence on which Hygiene relies establishes that a jury must make that determination and the relative comparative fault, if any, of the parties.

In sum, Hygiene fails to establish that it is entitled to judgment as a matter of law as to Plaintiff's negligence claim. Hygiene's motion for summary judgment as to Plaintiff's negligence claim is denied.

## CONCLUSION

Based on the foregoing, FPNA's motion for summary judgment [24] is GRANTED in part and DENIED in part, and Hygiene's motion for summary judgment [18] is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Dated this ⌁⌁ day of ⌁⌁⌁⌁⌁, 2014.

MARCO A. HERNANDEZ
United States District

21 - OPINION & ORDER